UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,                                     Case Number 16-20414

v.                                                       Honorable David M. Lawson

JUWAN ALLEN,

           Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Juwan Allen has filed a motion asking the Court to reduce his 120-month prison sentence by half under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Allen has served about 47 months of that sentence for participating in a drug distribution conspiracy. He offers a host of reasons in support of his argument that extraordinary and compelling reasons justify a sentence reduction. The government contends that Allen has not shown extraordinary and compelling reasons for release, and it maintains that he would be a threat to public safety if released. But Allen's reasons, either individually or in combination, do not amount to the "extraordinary and compelling reasons" that section 3582(c)(1)(A)(i) requires. Therefore, the motion will be denied.

I.

Allen was a street dealer for the notorious "Polo" drug dealing organization that operated in Detroit between 2012 and 2016. He was charged along with twelve co-defendants with distributing heroin, crack cocaine, and fentanyl. All of the co-defendants pleaded guilty except the ring leaders, Demarco Tempo and Kenneth Sadler, who were convicted at trial in 2019. The

second superseding indictment specified that the heroin and fentanyl sold caused death and serious injury to the drug users.

Under a plea agreement with the government, Allen pleaded guilty before the Honorable Avern Cohn on May 8, 2017 to a seventh superseding information, which charged him with conspiring to distribute at least one kilogram of heroin, 280 grams of crack, and an unspecified amount of fentanyl. The death and injury specification was not included in that charging document. As part of his plea agreement, Allen admitted that he delivered drugs to customers of the Polo organization after calls were placed to the organization's phone contacts. He also admitted that during his tenure several Polo clients overdosed on heroin or fentanyl and died, and that he was involved either directly or indirectly in the sales of drugs to the decedents. Allen further admitted that on eight separate occasions between April 21, 2016 and May 26, 2016, he personally sold "user level quantities" of heroin to an undercover officer who posed as a Polo customer. Finally, he also admitted that during a June 2016 raid of two Polo stash houses, two handguns were seized, and that the quantity of drugs distributed by the conspiracy amounted to at least one kilogram of heroin and 280 grams of crack cocaine.

The government represents that testimony from Tempo's and Sadler's trial showed that Allen participated in eight of the 17 controlled buys that were conducted during the investigation of the Polo organization, that customers of the organization identified him from photographs of the Polo dealer involved in those transactions, and that during an April 25, 2016 controlled buy, Allen sold heroin to an undercover officer while seated in a car driven by Tempo himself.

The plea agreement incorporated a guideline worksheet, which the defendant agreed set forth the guideline range under which he was anticipated to be sentenced. The net offense level reflected an enhancement for firearm possession and credit for acceptance of responsibility.

Despite the guideline worksheet (reflecting three criminal history points, which translates into criminal history category III), the Court determined at sentencing that Allen fell within criminal history category IV. The Court also deleted the enhancement for firearm possession. The Guideline Manual grid yielded a range of 100 to 125 months, but because of the statutory mandatory minimum sentence, the range became 120 to 125 months.

On June 18, 2018, Judge Cohn reluctantly sentenced Allen to the mandatory minimum 120-month prison term. Judge Cohn expressed the belief that the sentence was unduly harsh. He observed that there was no legal mechanism to avoid the mandatory minimum term, and he said that he understood the defendant's reluctance to cooperate with the government because being labeled a cooperator could have been life threatening. Judge Cohn also criticized the government's decision to charge Allen with a crime that did not permit more sentencing discretion.

Allen did not appeal his conviction or sentence. In March 2020, he filed a motion to vacate the conviction and sentence, which was denied as untimely on August 4, 2020. On December 2, 2021, the defendant filed, through counsel, a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). That motion was denied without prejudice due to defense counsel's failure to comply with the meet-and-confer requirement before filing. The motion for a sentence reduction was refiled on December 3, 2021.

Allen surrendered to the custody of the Bureau of Prisons on December 1, 2018, and he presently is confined at FCI Loretto in Loretto, Pennsylvania, which is a low-security federal prison that houses around 1,000 inmates. Since his surrender into custody after a deferred surrender date, Allen has served about 47 months or about 39% of his prison term. Public records of the Bureau of Prisons (BOP) indicate that the defendant is scheduled to be released from prison on December 16, 2026. Allen is 28 years old.

I.

By now it is well understood that, generally, "a federal court 'may not modify a term of imprisonment once it has been imposed,'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)), and that this "rule comes with a few exceptions, one of which permits compassionate release," *ibid.* The request for such relief must be presented by a motion filed in federal court, either by the Director of the Bureau of Prisons, 18 U.S.C. § 3582(c)(1)(A), "[o]r it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier,'" *ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Allen relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does

not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

Last year, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Allen has offered multiple arguments in his effort to establish extraordinary and compelling reasons to reduce his sentence. Those grounds include (1) disparities between the mandatory minimum sentence that he received and the sentences imposed on more culpable co-defendants, (2) his higher than average sentence for the type of drug crime to which he pleaded guilty, (3) non-retroactive changes in the sentencing scheme, which the defendant says would have resulted in his qualification for a sentencing safety valve if he was sentenced just six months later, (4) colorful commentary by Judge Cohn at the sentencing hearing strongly voicing his view that the mandatory minimum term imposed was unjust and dictated solely by abusive charging decisions by the government, (5) the defendant's relative youth (22 years old) at the time of his crimes, (6) his efforts at rehabilitation while incarcerated, and (7) "harsh conditions of confinement" resulting from the coronavirus pandemic.

The government characterizes some of these arguments as an invitation for the Court to meddle in plea negotiations, a forbidden exercise. That response is specious and mischaracterizes the defendant's position. Allen does not want to renegotiate his plea, and he certainly does not want the Court to assist. Instead, he expands on Judge Cohn's expressed frustration that his discretion was confined by the statutory minimum sentence and criticizes the government's charging decision.

The government's more substantive response is directed at the other grounds Allen cites, insisting that they cannot constitute extraordinary and compelling reasons under 18 U.S.C.

3582(c)(1)(A)(i) as a matter of law. Citing an "intra-circuit split" of authority, the government contends that nonretroactive changes in the law cannot serve as extraordinary and compelling reasons to reduce a sentence under the statute.

In *United States v. McCall*, 20 F.4th 1108 (6th Cir. 2021), *reh'g en banc granted*, 29 F.4th 816, 817 (6th Cir. 2022), the court of appeals clarified that "a court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances qualifying for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." *Id.* at 1116. The court went so far as to say that a district court abuses its discretion when it fails to consider whether the combination of the COVID-19 pandemic, rehabilitation efforts, and a nonretroactive change in sentencing law constitute extraordinary and compelling circumstances warranting a prisoner's compassionate release. *Ibid.*

We have observed on other occasions that the Sixth Circuit "has not traced a consistent path when dealing with" the impact of the non-retroactive sentencing reforms on compassionate release motions. *United States v. Davenport*, No. 91-81019, 2021 WL 3489707, at *2 (E.D. Mich. Aug. 9, 2021). In *United States v. Owens*, 996 F.3d 755, 763 (6th Cir. 2021), the court of appeals held that, "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, *along with other factors*, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied" (emphasis added). Shortly thereafter, different panels published conflicting opinions in *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021) and *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021), which held that courts may not treat non-retroactive amendments in the First Step Act as extraordinary and compelling explanation for a sentence reduction. Instead, the Sixth Circuit held that non-retroactive amendments only may be considered when balancing

- 7 -

the section 3553(a) factors upon a showing of "some other" extraordinary and compelling reason for a sentence reduction. *Jarvis*, 999 F.3d at 763.

Considering this "intra-circuit split," the *McCall* court explained that *Owens* controls. *McCall*, 20 F.4th at 1114. The court of appeals reasoned that, "[b]ecause *Owens* was published before *Jarvis*, *Owens* 'remains controlling authority' that binds future panels." *Ibid.* (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Thus, "[f]aced with the conflict between *Owens* and *Jarvis*, courts 'must follow' . . . *Owens*" and consider non-retroactive changes in the law as one of several factors warranting compassionate release. *Ibid.*

In a supplemental brief, the defendant argues that any confusion in the circuit law about whether non-retroactive statutory changes in sentencing provisions can constitute an "extraordinary and compelling" reason for a sentence reduction was dispelled by the Supreme Court's recent decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), where the Court held that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act," *id.* at 2404. *Concepcion* did not deal with the compassionate release statute, but its reasoning likely is broad enough to tip the scales in favor of the *McCall* faction over the *Jarvis* and *Hunter* faction.

Nonetheless, even with that gloss on the law, Allen has not shown that extraordinary and compelling circumstances exist that could justify a sentence reduction in this case.

First, the defendant contends that his age, purportedly minor role in the drug vending enterprise, and abusive charging practices by the government warrant a reduction. However, all of those circumstances were facts that existed at the time of sentencing, and — Judge Cohn's pointed and poignant commentary notwithstanding — they are facts that cannot now be relied upon to establish extraordinary and compelling circumstances for relief from a final judgment of

sentence. *Hunter*, 12 F.4th at 570 (holding that "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence"); *see also United States v. Lemons*, 15 F.4th 747, 750 (6th Cir. 2021) ("Two of the facts Lemons asks us to consider as part of our 'extraordinary and compelling' analysis were facts known at sentencing: the time between Lemons's commission of the ACCA-predicate offenses and the § 922(g)(1) offense, and Lemons's age when he committed the ACCA-predicate offenses.") (citing *Hunter*).

Second, Allen has not established that any such extreme sentencing disparity is present in the case as to show extraordinary and compelling circumstances. Allen's position that his role in the conspiracy was "minor" is belied by the fact that he personally was involved in more controlled buys than any other defendant. Three other defendants received the same or higher sentences. Two others received lengthy sentences, although somewhat shorter. The ring leaders received much longer terms of 25 and 30 years. Moreover, Allen was charged initially with a drug offense involving death or serious bodily injury, which would have triggered a mandatory minimum term of 20 years. He pleaded guilty to a reduced charge carrying a 10-year mandatory minimum, but he acknowledged in his plea agreement that people died from the drugs he sold. He has made no showing to suggest that the factual basis for the conviction was in any way unfounded or that he was not responsible for the enhanced crime. As the Sixth Circuit has observed, reducing a lengthy prison term without adequate grounds is just as likely to create sentencing disparities as to resolve them. *United States v. Westberry*, No. 21-6084, 2022 WL 1562364, at *1 (6th Cir. Mar. 31, 2022) ("[T]he court found that maintaining Westberry's within-guidelines sentence was the best way to avoid unwarranted sentencing disparities. Conversely, the court found that reducing Westberry's life sentence to time served after only 68 months in prison would probably create a sentencing disparity instead of avoiding one."). As noted above, the defendant's contention that he was less

culpable than other defendants cannot justify relief at this stage because all of the facts relating to his participation in the conspiracy were known at the time of his sentencing. The defendant also has not made any comprehensive presentation to establish that no apparent factors justified the sentencing disparities among co-defendants in his case, such as cooperation with the government. *Hunter*, 12 F.4th at 572. Therefore, there are no sufficient grounds for a finding that the disparities among punishments handed out in this case were not justified by other relevant factors.

Third, the defendant's argument that he would have been eligible for safety-valve relief if he was sentenced six months later is a non-starter. "[T]he safety-valve provision was enacted to prevent mandatory minimums from causing the least culpable offenders to receive the same sentences as their relatively more culpable counterparts." *United States v. Barron*, 940 F.3d 903, 913 (6th Cir. 2019) (cleaned up). However, to secure safety-valve relief, the defendant "must show that he meets each and every criterion" of the statute. *Id.* at 914. Regardless of any modification of the criteria in 18 U.S.C. § 3553(f)(1), it is undisputed that both before and after revision the statute required the defendant to show that "the offense did not result in death or serious bodily injury to any person." 18 U.S.C. § 3553(f)(3). He cannot do so here, where he was convicted of a drug crime resulting in death or serious bodily injury.

Moreover, to qualify, the defendant must debrief fully with the government. § 3553(f)(5). Admitting the facts of the crime during the guilty plea hearing is not enough. *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) (observing that "the safety valve provision not only requires a defendant to admit the conduct charged, but it also imposes an affirmative obligation on the defendant to 'volunteer any information aside from the conduct comprising the elements of the offense'") (citing *United States v. Arrington,* 73 F.3d 144, 149 (7th Cir.1996)). Judge Cohn pointed out at the sentencing hearing that because of concern for his safety, Allen would not

cooperate with the government enough to persuade it to file a downward departure motion under U.S.S.G. § 5K.1.1. And the government in its brief recounted that death and injury followed cooperators in this very case. It is unlikely that Allen would ever "volunteer [the] information" necessary to qualify for the safety valve; suggesting otherwise is pure speculation, and unlikely speculation at that. Even if changes to the safety valve statute theoretically could establish extraordinary and compelling reasons under section 3582(c)(1)(A), Allen cannot show that this change would help him now.

Fourth, it is settled that a defendant's post-sentencing rehabilitation cannot alone justify compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) (stating that section 3582(c)(1)(A)(i) "identif[ies] one reason that Congress precluded: 'Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason'").

Fifth, the defendant's mere exposure to the coronavirus pandemic, where a vaccine has been made available to him, also cannot make out an extraordinary and compelling case for sentencing relief under the First Step Act. The court of appeals has held that, in light of the availability of COVID-19 vaccinations and absent extenuating circumstances, the pandemic *alone* is not an extraordinary and compelling reason for a sentence reduction. *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022); *see also Lemons*, 15 F.4th at 751 ("[W]e agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic — when the defendant has access to the COVID-19 vaccine — does not present an 'extraordinary and compelling reason' warranting a sentence reduction.").

Finally, the facts of this case are remarkably similar to those in *Lemons*, where the court of appeals found that extraordinary and compelling reasons were not established. In *Lemons*, the defendant argued that his mandatory minimum sentence under the Armed Career Criminal Act

was unduly harsh because he was a teenager when he committed the predicate crimes over ten years earlier. But the court, citing *Hunter*, said that this reason was insufficient because those facts were known to the sentencing judge. 15 F.4th at 750. The court discounted Lemons's substantial rehabilitative efforts because "rehabilitation alone does not provide a proper basis for relief." *Ibid*. Finally, rejecting the COVID argument, the *Lemons* court held that "if an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling justification." *Id.* at 751.

Allen says that even if these individual arguments may not satisfy the section 3582(c)(1)(A)(i) requirement, taken together they push the case over the line. The idea that the cumulative effect of several features of a case can make it extraordinary or compelling has been recognized by the court of appeals. *Owens*, 996 F.3d at 763; *McCall*, 20 F.4th at 1112. That argument is unpersuasive here, though, where nearly all the facts supporting it were known to the sentencing judge at the time, and the thrust of the defendant's presentation is to conjure reasons to avoid the effect of a statutory mandatory minimum sentence that likely would still apply if the defendant were sentenced today.

The defendant has not established extraordinary and compelling reasons justifying a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).

C.

Because Allen has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021).

III.

Allen has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 813) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  November 15, 2022